UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:22-cr-10152-IT |
| | ) | |
| | ) | |
| DANIELLE LIGGINS | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

## I.    Introduction

Danielle Liggins will soon come before this Court to be sentenced for being a part of a

Conspiracy to Conduct an Unlicensed Money Transmitting Business. PSR ¶ 2.  To Ms. Liggins'

knowledge, the only other person involved in that business was Charles Ochi, the former

romantic partner who used her to facilitate a large, underlying fraud scheme of which she was

unaware. PSR ¶ 12, 15. The Presentence Report documents how Ochi used Ms. Liggins to

receive funds from victims and transfer them to co-conspirators, even though she did not know

where the money was coming from or where it was going. Id. Her crime was that she agreed to

transfer funds as a business at all because she did not have a license or comply with registration

requirements. Dkt. 27, Statement of Facts (stating that Ms. Liggins did not possess a license and

did not register as a money transmitter, but lacking any allegation that she was aware of the

source of the funds). The crime of Conducting an Unlicensed Money Transmitting Business

under 18 U.S.C. § 1960(b) is satisfied simply by failure to hold a license or comply with the

1

applicable regulations. *United States v. Mohummed Islam Uddin*, 365 F. Supp. 2d 825, 832 (E.D. Mich. 2005).

The guidelines in this case recommend a sentence of 12-18 months. PSR ¶ 83. However, there are numerous reasons for this Court to depart downward and impose a sentence without incarceration. The guidelines are driven by the loss amount, which was entirely determined by Ochi, and how he divided the fraud funds among five different transmitters. PSR ¶ 15. She is 32 years old and has only one prior conviction, an assault and battery on a police officer committed during a period in which she was experiencing multiple serious mental health crises that required hospitalization. PSR ¶ 35, 58, 59. During the 18 months Ms. Liggins has been on release in this case, she has gone from being homeless and unmedicated to employed with stable housing and appropriate treatment. She has been resilient in the face of multiple serious challenges and has benefited greatly from the support of her supervising probation officer in the District of Arkansas.

For these reasons and more, the defense recommends a sentence of one day time served and one year supervised release. On the particular facts of this case and the characteristics of this defendant, a sentence of time served and one year supervised release is "sufficient but not greater than necessary" to achieve the goals of sentencing.  18 U.S.C. § 3553(a)(1). Such a sentence would comply with the parsimony principle, which in the words of the First Circuit requires the Court to "construct a sentence that is *minimally* sufficient to achieve the broad goals of sentencing."  *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

II.     **The nature and circumstances of the offense do not suggest that Ms. Liggins presents any risk of recidivism.**

Ms. Liggins committed the offense of conducting a money transmitting business without the proper license or registration from October 2017 through February 2018. Dkt. 25, Information, p. 3, ¶¶ 15. At the time she was in a relationship with Charles Ochi. PSR ¶ 8. During the relationship, Ochi asked Ms. Liggins to help him run a purported cryptocurrency business. PSR ¶ 9. At his direction, she registered a business and opened bank accounts. Id. Ms. Liggins only did what Ochi told her because he was in charge. PSR ¶ 10. Funds were transferred into the accounts that she opened and she followed Ochi's instructions about how to disperse the funds. Id. Ms. Liggins received $1,000 per deposit into the accounts she opened. PSR ¶ 9. Nine deposits were made, with one being reversed by the bank. PSR ¶ 14. She has thus agreed to forfeiture in the amount of a $9,000.00 money judgment. Dkt. 27, Plea Agreement, ¶ 6.

At the time of the offense in late 2017 and early 2018, Ms. Liggins was a single mother with an 8-year-old son. PSR ¶ 54. She had dropped out of high school in 11th grade when she got pregnant, but later obtained a diploma online. PSR ¶ 73. She was trying to support herself and her young son while working as a lash technician. PSR ¶ 77. When she first met fraudster Ochi online, she would have appeared to be a suitable candidate for use in his scheme- young, naïve, financially struggling, and lonely. He manipulated her through both the possibility of earning money and by first earning her trust through a sexual and romantic relationship. This is a unique set of circumstances in which Ms. Liggins was taken advantage of by a guileful, older man.

Given the experience of discovering her own naivete and being prosecuted for her conduct, there is no reason to believe that Ms. Liggins is likely to ever commit another crime again.

Indeed, Ms. Liggins showed her desire to abide the law when she realized that what Ochi was telling her to do may have been illegal. When he told her to delete their messages, she became suspicious and saved some. PSR ¶ 16. When she was arrested more than four years after the offense conduct ended, she admitted her conduct and provided the messages to the government.

Ms. Liggins' behavior after her arrest is consistent with her law-abiding behavior throughout the majority of her life. She has only one prior conviction, an assault and battery on a police officer from 2021 for which she received probation. PSR ¶ 35. That offense was also committed under particular, extenuating circumstances in June 2021. Medical records submitted to the probation department show that Ms. Liggins began experiencing serious, chronic mental illness beginning in 2019. PSR ¶ 57. During the next several years, she was psychiatrically hospitalized several times. PSR ¶¶ 57-64. Two of those hospitalizations occurred in February 2021 and September 2021, just a few months before and after the June 2021 criminal incident. PSR ¶¶ 58, 59. The medical records show that during those 2021 episodes, Ms. Liggins displayed bizarre and aggressive behavior. Id. Given the ongoing mental health crisis she was experiencing at the time, it appears that her criminal charges could have been subject to challenges based on either competency to stand trial or lack of criminal responsibility. Ultimately she pled guilty in November 2022 and received probation, which has been running during the period of supervised release in this case. PSR ¶ 35. The similarity of Ms. Liggins' criminal and psychiatric behavior shows that mental illness was the underlying driver, and that any potential for recidivism would

4

only come from a lack of proper treatment. Ms. Liggins thus recommends an additional period of supervised release specifically to assist with her continued treatment.

### III.    Ms. Liggins has shown her desire to continue to live a law-abiding life during the period of pretrial release by engaging with treatment and obtaining both housing and employment.

Danielle Liggins was arrested for this offense on April 28, 2022. PSR ¶ 1. She was 31 years old and had been living with her grandfather and uncle for approximately one month. Pretrial Services Report, p.1 ("PTS Report"). She was unemployed. PTS Report, p.2. She had been smoking marijuana daily since she was 21, right up until her arrest. Id. In the weeks before her arrest, she had presented at the hospital with obvious symptoms of mental illness three separate times, being hospitalized once. PSR ¶¶ 61-63.

Ms. Liggins' mental health struggles continued in the months after her arrest. In August 2022, she was admitted to a hospital after being found to be "acutely delusional, disorganized, and  unable to care for herself." PSR ¶ 64. Given the degree of her dysfunction, Ms. Liggins was unable to continue living with her family. With the assistance of her supervising probation officer in Arkansas, she entered a 30-day inpatient program on September 9, 2022. See Petition for Action on Conditions of Pretrial Release, November 22, 2022. She completed that program and then transitioned to a 90-day program. Id. While in the 90-day program, she received individual and group substance abuse treatment, attended additional self-help meetings, and attended mental health treatment. Id. Ms. Liggins also found a job during this time. Id.

Ms. Liggins eventually obtained her own, stable housing. PSR ¶ 44. She now lives by herself in a small apartment. Id. She supports herself by working two jobs. PSR ¶¶ 75, 76.

Danielle Liggins' current functioning and stability were unimaginable in August 2022 when she was found walking down the street naked and having delusions about being a demon and a deceased rapper. PSR ¶ 64. There were times during this period when counsel and probation were in regular contact with each other trying to keep tabs on Ms. Liggins' location- whether at a hospital, with family, or out on the street. Counsel wishes to recognize the great efforts of Jordan Riggs, the supervising probation officer in Arkansas, who patiently and repeatedly worked with Ms. Liggins to get her into treatment and obtain housing. Without Mr. Riggs' intervention, Ms. Liggins would likely be either incarcerated, committed, or homeless. She is none of those things. Instead, she is employed, stable, and attending to her obligations to the Court and the government. Ms. Liggins took hold of the hand that Mr. Riggs extended to her. She has shown great resilience which demonstrates that she has every intention of continuing to live a law-abiding life.

Ms. Liggins admittedly was not in full compliance with all of her conditions while on release. She had lapses of her mental health treatment and tested positive for marijuana several times. PSR ¶ 4. The probation department alleges that two positive tests were in May 2022, less than 30 days after her arrest. Id. Ms. Liggins admitted in the PTS Report that she smoked marijuana the day before her arrest. PTS Report, p.2. Marijuana commonly remains in the blood for 30 days, and thus the positive tests in May 2022 should not be considered violations. Even the June 6, 2022 test could well be a residual positive it occurred less than 40 days from arrest. Regardless, there were no additional positive tests for marijuana or any other substance in the next 13 months. Id. After having smoked daily for more than a decade, Ms. Liggins did not smoke for approximately 13 months. That result took effort. The first positive test after those 13

months occurred on July 24, 2023, PSR ¶ 4. That result occurred approximately six weeks after codefendant Charles Ochi was sentenced. *United States v. Ochi*, 22-cr-10255-RGS, Dkt. 102. Ms. Liggins has expressed feelings of anxiety, stress, and hopelessness as her own sentencing approaches. PSR ¶ 67.

Despite her stumbles, the story of Danielle Liggins' conduct while on pretrial release is one of great success. That success is a strong indicator that what she requires is treatment, not incarceration, and that she has the ability to take advantage of opportunities given to her.

## IV.    Conclusion

For all the reasons described above, incarcerating Ms. Liggins would not serve any of the purposes of sentencing under 18 U.S.C. § 3553(a). Rather, the purposes of sentencing will be accomplished through continuing the treatment which has made such a difference in her life. For those reasons, a sentence of one day time served and one year supervised release is one that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

Respectfully submitted,
DANIELLE LIGGINS
by her attorney
*/s/ Joshua Hanye*
Joshua Hanye, BBO#661686
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
Joshua_Hanye@fd.org

## **Certificate of Service**

I, Joshua Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.


Date: <u>October 19, 2023</u>                                         <u>/s/ *Joshua Hanye*</u>
                                                                                    Joshua Hanye